UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                              Chapter 7
                                                    Case No. 1-20-42258-ess
ANTONINO VENTICINQUE,
AKA ANTONIO VENTICINQUE
AKA ANTONIO A VENTICINQUE
AKA ANTONINO A VENTICINQUE


                          Debtor.
-------------------------------------------------------------x

BERNADETTE KASCHNER,
                                                    Adv. Pro. No. 20-1096-ess
                          Plaintiff,

       -against-

ANTONINO VENTICINQUE,
AKA ANTONIO VENTICINQUE
AKA ANTONIO A VENTICINQUE
AKA ANTONINO A VENTICINQUE

                          Defendant.
-------------------------------------------------------------x

## MEMORANDUM DECISION ON THE MOTION
## TO DISMISS THE AMENDED COMPLAINT

*Appearances:*

Bernadette Kaschner                    Charles Zolot, Esq.[1]
1513 Beach Avenue                      37-06 82nd Street
Cape May, NJ  08204                    Jackson Heights, NY 11372
*Plaintiff, pro se*                    *Attorney for Defendant Antonino Venticinque*

                                       Antonino Venticinque
                                       34-57 82nd Street
                                       Apartment 6B
                                       Jackson Heights, NY 11372
                                       *Defendant, pro se*

---

[1]As the record reflects, Mr. Zolot was counsel of record for Mr. Venticinque when this Motion to Dismiss the Amended Complaint was filed.  Mr. Zolot passed away in August 2021, and Mr. Venticinque is now proceeding *pro se*.

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Plaintiff Bernadette Kaschner commenced this adversary proceeding against Defendant Antonino Venticinque, in his capacity as a general contractor, in connection with a renovation project (the "Project") of Ms. Kaschner's real property located at 1513 Beach Ave, Cape May, NJ 08204 (the "Property").  Am. Compl., ECF No. 30, ¶ 7.  She seeks a determination from this Court that Mr. Venticinque's debt to her arising from a New Jersey Superior Court judgment (the "Judgment") is nondischargeable under Bankruptcy Code Section 523(a)(2)(A) or, in the alternative, denying Mr. Venticinque's discharge under Bankruptcy Code Section 727(a)(4)(A).  Am. Compl. ¶ 50.  She asserts that the Judgment was the result of Mr. Venticinque's fraudulent conduct over the course of the Project.  Am. Compl. ¶¶ 32-37.

Before the Court is Mr. Venticinque's motion to dismiss the Amended Complaint (the "Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Bankruptcy Rule 7012(b).

## Jurisdiction

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (I) and (J), and 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## Background

The following matters are alleged in the Amended Complaint and are taken as true for purposes of this Motion to Dismiss.

*The Project*

In December 2003, Ms. Kaschner and Mr. Venticinque, as the principal of Vensa Contracting Corporation ("Vensa"), entered into a construction contract (the "Contract"), in which Mr. Venticinque agreed to provide general contracting services and certain materials for Ms. Kaschner in accordance with an architect's plan and specifications to renovate a historic four-story oceanfront property and cottage located at 1513 Beach Avenue, Cape May, New Jersey, into six condominium units.  Am. Compl. ¶ 7.  The Contract provided that the work would be completed nine months after it commenced.  *Id*.

During the course of the Project, Ms. Kaschner alleges that disputes arose between Mr. Venticinque and her concerning, among other matters, the progress of the Project, the quality of contracting services and materials provided, and certain purchases of appliances to be installed at the Property.  Am. Compl. ¶ 11.  She also alleges that after the Project deadline passed in December 2004, Mr. Venticinque abandoned the Project.  *Id*.  And Ms. Kaschner claims that she ultimately had to hire other contractors and laborers to complete the Project.  Am. Compl. ¶ 12.

*The State Court Action*

Ms. Kaschner asserts that in 2007, as part of her attempt to elicit a response from Mr. Venticinque, Ms. Kaschner filed a complaint with the New Jersey Office of the Attorney General, Division of Consumer Affairs, Alternative Dispute Resolution Unit.  Am. Compl. ¶ 21. In a letter dated December 12, 2007, the Division informed Ms. Kaschner that it had attempted to contact Vensa several times without success, and that it would refer the complaint back to the Office of Consumer Protection for review and possible legal action.  Opp. Ex. B, ECF No. 38.

In 2009, Ms. Kaschner commenced an action against Mr. Venticinque and Vensa in the Superior Court of New Jersey, Law Division, Cape May County (the "New Jersey State Court

Action"), asserting claims for breach of contract, breach of express warranties, breach of implied warranties, consumer fraud, declaratory judgment, and breach of duty to perform work in a reasonably good and workmanlike manner.  Am. Compl. ¶ 32.  In August 2011, the New Jersey Superior Court entered a default judgment in Ms. Kaschner's favor based on Mr. Venticinque's and Vensa's failures to appear and to defend the action, and holding Mr. Venticinque and Vensa jointly and severally liable to Ms. Kaschner for $285,962.04, $857,886.12 in treble damages, and $5,413.71 in attorney's fees.  Am. Compl. ¶ 36.

*Mr. Venticinque's Chapter 7 Bankruptcy Case*

On June 4, 2020, Mr. Venticinque filed a petition for relief under Chapter 7 of the Bankruptcy Code.  Case No. 20-42258, ECF No. 1.  On July 14, 2020, Mr. Venticinque appeared at the Section 341 meeting of creditors (the "Section 341 Meeting"), at which Ms. Kaschner appeared and questioned Mr. Venticinque.  And on September 16, 2020, Mr. Venticinque received a discharge.  Case No. 20-42258, ECF No. 18.

*This Adversary Proceeding*

The Complaint

On August 4, 2020, Ms. Kaschner commenced this adversary proceeding by filing a complaint against Mr. Venticinque.  ECF No. 1.  In the Complaint, she asserts claims under Bankruptcy Code Sections 523(a)(2)(A) and (a)(4), and asks this Court to declare that Mr. Venticinque's debts owed to her are nondischargeable.  Compl. ¶ 3.

The Amended Complaint

On February 16, 2021, Ms. Kaschner filed an Amended Complaint, in which she removes the claim under Bankruptcy Code Section 523(a)(4) and adds a claim under Bankruptcy Code Section 727(a)(4)(A).  Am. Compl. ¶ 3.  In the first count, she alleges that the Judgment amount

is nondischargeable because "it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code [Section] 523(a)(2)(A)."  Am. Compl. ¶ 40.  And in the second count, she alleges that Mr. Venticinque knowingly made a false oath or account concerning, among other things, his assets and work history.  Am. Compl. ¶¶ 41-43.  Ms. Kaschner asks this Court to find that the judgment is nondischargeable under Section 523(a)(2)(A), to deny Mr. Venticinque's discharge under Section 727(a)(4)(A), and to grant such other and further relief as may be just and proper.  Am. Compl. ¶¶ 41-43.

On March 30, 2021, Mr. Venticinque responded to the Amended Complaint by moving to dismiss pursuant to Rule 12(b)(6).  Memorandum of Law in Support of the Motion to Dismiss, ECF No. 35-5 (the "Motion to Dismiss" or "Mot.").  On June 11, 2021, Ms. Kaschner filed opposition to the Motion to Dismiss (the "Opposition" or "Opp.") and attached several exhibits in support of her Opposition. Opp., ECF No. 38.  And on September 14, 2021, she supplemented her Opposition by filing the transcript of the Section 341 Meeting.  ECF No. 40.

From time to time, the Court held continued pre-trial conferences and heard arguments on the Motion to Dismiss, at which Ms. Kaschner and Mr. Venticinque, by his counsel and then *pro se*, appeared and were heard, and the record is now closed.

The Allegations of the Amended Complaint

The Court accepts the following facts from Ms. Kaschner's pleadings as true for the purpose of deciding this Motion to Dismiss.  *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010) (accepting the plaintiff's factual allegations as true).

Ms. Kaschner alleges that on or about December 10, 2003, she and Mr. Venticinque, as the principal of Vensa, entered into a contract for the renovation and conversion of the Property

into six condominium units, and to complete the work within nine months from the start date. Am. Compl. ¶¶ 7, 40.  She alleges that Mr. Venticinque provided written references as to his ability and experience and a list of recently completed restoration and renovation projects in New Jersey.  Am. Compl. ¶¶ 7, 40.  The scope of work included, among other things, general contracting, management of sub-contractors, re-framing the interior structure, the purchasing of all materials, installation services, the replacement of the existing concrete entry and stoop, and the interior construction of the additional cottage on the property.  Am. Compl. ¶ 7.

Ms. Kaschner also alleges that Mr. Venticinque promised to complete the Project within nine months and abandoned the partially-completed Project in December 2004.  Am. Compl. ¶¶ 7, 40.  She states that Mr. Venticinque did not provide timely and adequately contractor services and materials as required by the Contract, and separately, that he caused delays of the Project and abandoned the Project without making requested repairs.  Am. Compl. ¶ 9.  She alleges that Mr. Venticinque's work was not completed in a workmanlike manner, and that he did not substantially perform under the Contract, completing only ten of the twenty-eight tasks listed in the Contract.  Am. Compl. ¶¶ 9a, 16.  And she states that Mr. Venticinque double-billed and overcharged her for certain work and materials that he was obligated under the Contract to provide.  Am. Compl. ¶ 10.

In addition, Ms. Kaschner alleges that before Mr. Venticinque abandoned the Project, she paid $579,000 to him, under duress, for labor and materials that she was later forced to repurchase at her own expense.  Am. Compl. ¶ 13.  She alleges that at various times, she notified Mr. Venticinque of these issues and concerns, and demanded that he address them.  Am. Compl. ¶¶ 11, 40.  In response, Ms. Kaschner alleges, Mr. Venticinque repeatedly provided excuses, and abandoned his crew of construction workers owing them six weeks of unpaid wages.  *Id*.  And

she alleges that she also demanded that Mr. Venticinque reimburse her for improper payments, overpayments, and funds that he received but did not use to purchase materials.  Am. Compl. ¶ 14.

And Ms. Kaschner alleges that Mr. Venticinque and his then-spouse, Nicole Venticinque, remitted four checks to her to reimburse her for the purchase of building materials and supplies, and that those checks were returned for various reasons, as follows:

- Vensa check no. 1562 from Independence Bank dated August 19, 2004 for $10,000, returned on September 8, 2004 for insufficient funds;

- Vensa check no. 1657 from Independence Bank dated December 7, 2004 for $10,000, returned on December 22, 2004 for insufficient funds;

- Ms. Venticinque's check no. 130 from NVE Bank dated February 16, 2005 for $30,000, returned on February 22, 2005, because it was written on a closed account; and

- Ms. Venticinque's check no. 130 from Bank of America dated March 25, 2005 for $40,000, returned on March 28, 2005 and April 8, 2005 for insufficient funds.

Am. Compl. ¶¶ 15, 16, 40.

Ms. Kaschner further alleges that Mr. Venticinque knew the representations that he made to her were false at the time they were made, and that they were made deliberately for the purpose of deceiving her.  Am. Compl. ¶ 40(2).  She asserts that two weeks after signing the Contract, in January 2004, he started working on a major condominium project in Union City (the "Union City Condominium Project"), New Jersey some 150 miles away from the Property. Am. Compl. ¶¶ 30, 40.  Based on all of these circumstances, she alleges that Mr. Venticinque made a false representation to her with the intent to deceive when he stated that he would be the

general contractor and construction manager on the Project. Am. Compl. ¶ 40(3).

Additionally, Ms. Kaschner alleges that she justifiably relied on Mr. Venticinque's representations. Am. Compl. ¶ 40(4). She states that she relied to her detriment on his representations as to his work as a general contractor, his contractual promise to supply building materials and labor for the Project, and his promise to refund money that she advanced to him. Am. Compl. ¶ 40(4).

And Ms. Kaschner alleges that her reliance on Mr. Venticinque's false representations proximately caused her to suffer damages. Am. Compl. ¶ 40(5). She alleges that as a result of Mr. Venticinque's abandonment of the Project, the "Project took an additional [twelve] months to complete" and that Certificates of Occupancy were not obtained until December 2005. Am. Compl. ¶ 9. *See* Am. Compl. ¶¶ 11, 16, 18, 40. She also alleges that she was required to hire other contractors and laborers at an additional cost of $345,941 for goods and services that Mr. Venticinque was obligated to provide. Am. Compl. ¶¶ 9, 11, 16, 18, 40.

Ms. Kaschner alleges that based on her investigation and analysis, due to the delayed completion of the Project, she has incurred at least $477,000 in damages resulting from loss of rental income, the forced sale of Unit 3 at the Property, and loss in value. Am. Compl. ¶¶ 8, 12, 40. And she points to a report dated October 16, 2007, from J.P. Bainridge & Associates, attached as an exhibit to the Amended Complaint, identifying the damages incurred as a result of Mr. Venticinque's failure to perform under the Contract. Am. Compl. Exh. B.

Ms. Kaschner also alleges that Mr. Venticinque "knowingly and fraudulently" made a false oath or account with respect to issued checks, his association with Michael Chouraqui, his employment history, his knowledge of the Judgment, his period of incarceration, and whether he has had accounts at Ameriprise Financial or E-Trade Investment Securities ("E-Trade"). Am.

Compl. ¶¶ 41-49.  She asserts that at a January 14, 2021 pre-trial conference (the "January 14 Pre Trial Conference"), Mr. Venticinque's statement that "there are no checks" was false, because he knew that checks were written from his business account and his wife's account.  Am. Compl. ¶ 43.  She also alleges that he falsely stated that he does not know a person by the name of Chouraqui or of any lawsuits involving this individual.  Am. Compl. ¶ 44.  She states that Mr. Venticinque and Mr. Chouraqui were business partners in the Union City Condominium Project, and that Mr. Venticinque's divorce papers refer to a lawsuit with Mr. Chouraqui.  *Id.*

Further, Ms. Kaschner alleges that Mr. Venticinque falsely stated at the Section 341 Meeting that he never did any business in Union City, and that he had never built any projects there.  Am. Compl. ¶¶ 25, 44.  She alleges that Mr. Venticinque's denial that he has any knowledge of matters involving Mr. Chouraqui contradicts his divorce filings and public records, which show that Mr. Venticinque filed a lawsuit against Mr. Chouraqui, and that they were once business partners.  Am. Compl. ¶¶ 24, 25, 28, 44, 45.

With respect to Mr. Venticinque's business history, Ms. Kaschner alleges that Mr. Venticinque's own LinkedIn profile states that he was the owner of Vensa and the managing project director of Park Hudson Group in Hudson County, New Jersey, from January 2004 to May 2013.  Am. Compl. ¶ 30.  Also, Ms. Kaschner alleges that Mr. Venticinque's LinkedIn profile indicates that he has been a senior project management for Tona Construction & Management from December 2018 to the present, and is currently involved in several projects including a Brooklyn-based project, a mixed-use building in Yonkers, New York, and a residential project in Florida.  Am. Compl. ¶ 31.

In addition, Ms. Kaschner alleges that in the New Jersey State Court Action, she attempted to serve Mr. Venticinque eight times by various means from July 2, 2010 to November

5, 2013.  Am. Compl. ¶ 33.  She alleges that he was aware of the New Jersey State Court Action and the Judgment that was rendered against him, and that his incarceration did not bar Ms. Kaschner's proper service of notices.  Am. Compl. ¶¶ 32, 37, 47.  Further, Ms. Kaschner alleges that, at the Section 341 Meeting, Mr. Venticinque claimed that "he spent [five] years in jail, when in actuality he spent a little over [nine] months in jail."  Am. Compl. ¶ 48.

<u>Mr. Venticinque's Motion to Dismiss</u>

On March 30, 2021, Mr. Venticinque moved to dismiss the Amended Complaint.  He argues that Ms. Kaschner's Section 523(a)(2)(A) claim should be dismissed because her allegations do not amount to fraud, as required by the Bankruptcy Code, and that her claims arising out of the Contract assert "nothing more than numerous breaches of defendant's contractual obligations."  Mot. at 2, 4.  Mr. Venticinque also argues that Ms. Kaschner could not have justifiably relied on his representations, based on their prior interactions and in particular, the prior returned checks, and that she should have insisted on receiving payment in certified funds.  Mot. at 4.

Mr. Venticinque disputes Ms. Kaschner's allegations that he took funds from her for appliances that he never delivered, and asserts that the Contract did not require him to provide or install appliances, and instead, this was the plumber's obligation.  Mot., Exh. A., Affidavit of Defendant in Support of Motion to Dismiss ("Def. Aff."), ¶ 11.  As to Ms. Kaschner's allegation that he did not deliver the necessary materials for the Project, Mr. Venticinque argues that he was not obligated to perform these tasks under the Contract, and that "any work that was not completed was after [he] refunded the $30,000."  Def. Aff. ¶ 12.

As to the allegations that he was never on site at the Project, Mr. Venticinque states that he always had a competent supervisor onsite who could reach him if necessary.  Def. Aff. ¶ 13.

And as to the Judgment in the New Jersey State Court Action finding him to be in violation of New Jersey's consumer fraud statute, Mr. Venticinque argues that this Court should not give that Judgment any weight because the Judgment was entered on default.  Def. Aff. ¶ 14.

As to the allegations concerning checks that were returned, Mr. Venticinque states that Ms. Kaschner, not he, was at fault for the returned checks because she did not wait until the closing of the sale of his real property in Teaneck, New Jersey (the "Teaneck Property") before attempting to deposit the checks.  Def. Aff. ¶ 15.  He also states that he was threatened by Ms. Kaschner's husband about the issuance of a check prior to the closing of the Teaneck Property, and in response, he issued a new check for $30,000 and put a stop-payment on the previous check for that amount.  Def. Aff. ¶ 16.  In addition, Mr. Venticinque argues that the $40,000 check was postdated in December 2004, and that he should have asked for this check back after that closing occurred.  Def. Aff. ¶ 17.

Further, Mr. Venticinque argues that his statements under oath at his Section 341 Meeting, are neither material to this case nor made with fraudulent intent, including his alleged statements and omissions concerning his relationship with Mr. Chouraqui, his business history in Union City, his employment history, his knowledge of the Judgment in the New Jersey State Court Action, and his prior accounts with Ameriprise Financial and E-Trade.  Mot. at 6-9.  Mr. Venticinque also argues that Ms. Kaschner has not provided persuasive evidence that he owned various entities, and he states that he was, at most, a project manager for some of those entities.  Mot. at 7-8.

And finally, Mr. Venticinque argues that the Amended Complaint should be dismissed because requiring him to litigate without the necessary records dating back to 2004 or 2005 to support his defense is extremely prejudicial.  Mot. at 9-10.  Specifically, Mr. Venticinque argues

that he no longer has the records that would show he had refunded Ms. Kaschner $30,000 "at the time they went their separate ways," the records that would establish the nature and extent of the change orders, or the records that would reflect that the requests for disbursement were approved by Ms. Kaschner's lender.  Mot. at 9-10.  *See* Def. Aff. ¶¶ 18-20.

Ms. Kaschner's Opposition

Ms. Kaschner opposes Mr. Venticinque's Motion to Dismiss on several grounds, and submits several exhibits in support of her opposition.

First, Ms. Kaschner responds that the Amended Complaint sets forth sufficient facts to state causes of action against Mr. Venticinque under Bankruptcy Code Sections 523(a)(2)(A) and 727(a)(4)(A).  Opp. ¶ 2.  Next, in response to Mr. Venticinque's factual assertions and disputes, Ms. Kaschner states that only one change order occurred during the Project, that Mr. Venticinque provided her with a proposal for the purchase of certain appliances, and that he had notice of the New Jersey State Court Action.  Opp. ¶¶ 10, 12, 15.

Additionally, as to Mr. Venticinque's arguments concerning his prior statements and omissions, Ms. Kaschner responds that his statements in the Motion to Dismiss are not consistent with the record.  As to his statement that he has not had contact with Mr. Chouraqui since 2007, Ms. Kaschner argues that the record shows that he and Mr. Chouraqui were affiliated with each other until May 2013, because they worked at the same company, Park Hudson Group, and because they were both named as defendants in several lawsuits.  Opp. ¶¶ 17, 19, 24.  In addition, Ms. Kaschner responds that Mr. Venticinque has several addresses in Union City, even though he denies working or living in that location.  Opp. ¶¶ 18, 23.  As to Mr. Venticinque's ownership of corporate entities, Ms. Kaschner responds that background searches show that he has ownership interests in several companies.  Opp. ¶¶ 26-27, 29-32.

As to Mr. Venticinque's employment history, Ms. Kaschner responds that his statements are contradictory. For example, she states that Mr. Venticinque denies that he has worked on a project in Brooklyn, while at the same time he states on his LinkedIn profile that he is currently working on a superstructure project there. Opp. ¶ 20. She also notes that his LinkedIn account states that he is a senior project manager for Erin Construction, which is currently building a nine-story apartment building in Yonkers. Opp. ¶ 21. And she argues that while Mr. Venticinque states that he does not work for Tona Construction, his current LinkedIn profile states otherwise. Opp. ¶ 22.

Ms. Kaschner also responds that Mr. Venticinque makes statements that are inconsistent with verified credit reports concerning his financial accounts. In particular, she points out that Mr. Venticinque states that he has never had accounts at Ameriprise Financial or E-Trade, and that this is contradicted by verified credit reports. Opp. ¶ 33. As to Mr. Venticinque's statements that he is struggling financially, Ms. Kaschner responds that his recent travel to South America and Florida suggests otherwise. Opp. ¶ 35.

As to her Section 523(a)(2)(A) claim, Ms. Kaschner responds that allegations of gross recklessness are sufficient to state a claim under this Section. Opp. ¶ 47. And she states that reliance may be justifiable "'even if the falsity of the representation could have been ascertained upon investigation.'" Opp. ¶ 50 (quoting *Citibank* (*South Dakota*)*, N.A. v. Eashai* (*In re Eashai*), 87 F.3d 1082, 1090 (9th Cir. 1996)).

Lastly, Ms. Kaschner argues that at least one bankruptcy court has held that a debt arising from a debtor committing "actual fraud" in violation of the New Jersey Consumer Fraud Act is nondischargeable. Opp. ¶ 51 (citing *Cohen v. De La Cruz*, 523 U.S. 213 (1998) (affirming the Third Circuit's holding that an award of treble damages and attorney fees under the New Jersey

Consumer Fraud Act is nondischargeable)).

As to her Section 727(a)(4)(A) claim, Ms. Kaschner responds that here, too, she has sufficiently alleged a claim. Opp. ¶ 52. She states that Mr. Venticinque was aware of the New Jersey State Court Action and the Judgment before his attempt to use a veterans loan to purchase a home in 2015 or 2016. Opp. ¶ 53. She also argues that his denials that he knew Mr. Chouraqui, or lived or worked in Union City, are plainly false, as shown by certain "asset searches" submitted with her opposition that show that he and Mr. Chouraqui had a business relationship, and that he had assets in Union City. Opp. ¶¶ 57-61.

Finally, Ms. Kaschner argues, in substance, that that Mr. Venticinque does not have the discretion to choose what he wants to disclose because "'reckless disregard of both the serious nature of the information sought [in a bankruptcy petition] and the necessary attention to detail and accuracy in answering may rise to the level of the fraudulent intent necessary to bar a discharge.'" Opp. ¶ 66 (quoting *Repack v. Fejes* (*In re Fejes*), 2013 WL 2338241 (Bankr. D.N.J. May 29, 2013).

<u>Mr. Venticinque's Reply</u>

In his reply, Mr. Venticinque advances several arguments in further support of his Motion to Dismiss. First, he replies that Ms. Kaschner "presented no evidence that [he] knew at the time that he represented the project would be completed in [nine] months that said representation would be false." Reply at 1. He also replies that when he and Ms. Kaschner entered into the Contract for the Project, he was not aware that the Project plans were incorrect, and this made it impossible to complete the Project within nine months. Reply at 1-2.

As to the checks that were returned, Mr. Venticinque replies that Ms. Kaschner's reliance on personal checks was unjustifiable because she had notice of prior returned checks, and that

she should have insisted on certified funds.  Reply at 2.  And as to Ms. Kaschner's argument that he falsified one of Ms. Venticinque's checks, he replies that this allegation is conclusory and lacks any factual basis.  *Id*.

In addition, Mr. Venticinque replies that the allegation that he "installed defective materials does not establish that [he] knew the materials were defective, which amounts to "nothing more than a breach of contract action."  Reply at 3.  To the same effect, he replies that there is "no evidence that [he] knew or should have known [the materials were] defective" to establish that he acted with gross recklessness.  Reply at 5.

Mr. Venticinque also replies that Ms. Kaschner's reliance on the Supreme Court's decision in *Cohen v. De La Cruz*, is misplaced because that decision was not based on a default judgment, unlike the New Jersey State Court Judgment here.  Reply at 3 (citing *Cohen*).

Further, Mr. Venticinque replies that *SEC v. Bocchino* (*In re Bocchino*), 794 F.3d 376 (3d Cir. 2015), can be distinguished from this case, because the facts there are very different from the facts alleged here.  Reply at 4.  In *In re Bocchino*, the court considered a Section 523(a)(2)(A) claim against a stockbroker who "induced [an] investor[] to invest in a [company] without doing a proper investigation."  *Id.*  By contrast, here, Mr. Venticinque states that his representation that he would complete the Project in nine months "was based on the information that he had at the time the contract was signed."  *Id*.

As to Ms. Kaschner's allegations concerning the returned checks, Mr. Venticinque replies that her justifiable reliance argument fails.  Reply at 5.  He states that her citation to *Dakota Steel, Inc. v. Dakota* (*In re Dakota*), 284 B.R. 711 (Bankr. N.D. Cal. 2002), is misplaced because there, the court held that a person with special knowledge and experience may not be permitted to rely on representations that an ordinary person would accept.  Reply at 4 (citing *In re Dakota*,

284 B.R. at 722).  Accordingly, Mr. Venticinque argues, a knowledgeable and experienced businessperson such as Ms. Kaschner, who sought to build six condominium units to derive rental income, "was certainly sophisticated enough to realize that if checks had been returned for insufficient funds on more than one occasion that she should not accept checks from the debtor or his family[] going forward unless they were certified or bank checks."  Reply at 5.

Mr. Venticinque also addresses Ms. Kaschner's arguments in support of her Section 727(a)(4)(A) claim.  First, he replies that the Court should not consider her Section 727(a)(4)(A) claim as she has not provided a copy of the Section 341 Meeting transcript, and as a consequence, he cannot verify the questions and responses as stated by her.  Reply at 5.[1] Second, he replies that he is not a member of the LLC entities that are identified by Ms. Kaschner.  Reply at 6.  And he states that she has not "set forth any evidence to support her claims other than asset searches and unsubstantiated court records."  Reply, Exh. C, Affidavit of Defendant in Support of Reply Memorandum, ¶ 21.

Third, Mr. Venticinque replies that the questions of his work history and residence in Union City have no bearing on this bankruptcy case.  Reply at 6.  And finally, as to Ms. Kaschner's allegation that he knew of the Judgment in 2009 when the Attorney General's Office assertedly notified him, he replies that at the time, the complaint was no more than a consumer dispute as the Judgment was not entered until 2011.  Reply at 6-7.

### The Applicable Legal Standards

#### *The Pleading Requirements of Federal Rule of Civil Procedure 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding

---

[1]  On September 14, 2021, Ms. Kaschner filed the transcript of the Section 341 Meeting in support of her Opposition.  ECF No. 40.

by Bankruptcy Rule 7012, permits a party to seek dismissal of an action at the pleading stage if it does not state a claim upon which relief may be granted.  As the Supreme Court has held, for a complaint to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 570 (2007).  As the Court explained, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

It is well established in the Second Circuit that where a pro se litigant is the plaintiff, courts should "liberally construe [such] complaints . . . to state the strongest arguments that they suggest." *Frederick v. Wells Fargo Home Mortg.*, 649 F. App'x 29, 30 (2d Cir. 2016) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).  Although the complaint "must plead enough facts to state a claim that is plausible . . . a complaint filed *pro se* is held to a less stringent pleading standard than one filed by counsel." *Frederick*, 649 F. App'x at 30 (citing *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012)).

When considering a motion to dismiss under Rule 12(b)(6), the court should "'accept[] all factual allegations as true, and draw [] all reasonable inferences in the plaintiff's favor.'" *DiFolco*, 622 F.3d at 110-11 (alteration in original) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)).  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993) (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor).  But a court is not required to accept as true those allegations that amount to no more than legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009); *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, a court may look to the facts alleged in the complaint, and also to those "[d]ocuments that are attached to the complaint or incorporated in it

by reference." *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). *See Gillingham v. Geico Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (quoting *Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)) (stating that when considering a Rule 12(b)(6) motion to dismiss, a court may look to the complaint, its exhibits, and documents incorporated by reference).

And claims involving allegations of fraud trigger particular and heightened pleading requirements under Federal Rule of Civil Procedure 9(b), made applicable here by Bankruptcy Rule 7009. *S&T Bank v. Howard* (*In re Howard*), 2009 WL 4544392, at *2 (Bankr. S.D.N.Y. Nov. 25, 2009). To satisfy the pleading requirements of Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). As the Second Circuit has held, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004).

### The Elements of a Bankruptcy Code Section 523(a)(2)(A) Claim

Bankruptcy Code Section 523(a)(2)(A) excepts from discharge "any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement in writing respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). To prevail on a Section 523(a)(2)(A) claim, a creditor must establish five elements:

> first, that the debtor made a false representation; second, that the debtor knew the representation was false at the time it was made; third, that the debtor made the false representation with the intent to deceive the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained a loss that was proximately caused by the false representation.

*First Am. Title Ins. Co. v. Moses* (*In re Moses*), 547 B.R. 21, 35 (Bankr. E.D.N.Y. 2016) (citing *Fleet Credit Card Servs., L.P. v. Macias* (*In re Macias*), 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (citation omitted)).

The first element, that the debtor made a false representation, calls for the Court to consider whether "'(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant.'" *Parklex Assocs. v. Deutsch* (*In re Deutsch*), 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017) (quoting *Frishberg v. Janac* (*In re Janac*), 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009). "Omissions of fact can qualify as false representations: '[a] false representation can be shown through either an express statement or through an omission where the circumstances are such that disclosure is necessary to correct what would otherwise be a false impression.'" *In re Deutsch*, 575 B.R. at 599 (quoting *Signature Bank v. Banayan* (*In re Banayan*), 468 B.R. 542, 574-75 (Bankr. N.D.N.Y. 2012) (citations omitted)).

The second element, that the debtor knew that the representation was false at the time it was made, turns on the debtor's "actual state of mind . . . at the time" that the misrepresentation was made. *In re Moses*, 547 B.R. at 36 (citing *In re Parkhurst*, 202 B.R. 816, 822 (Bankr. N.D.N.Y. 1996)). And this element is satisfied if the maker of the representation knew or believed that the matter was not as represented, did not have confidence in the accuracy of their representations, or knew that he or she did not have a basis to make the representations. *In re Moses*, 547 B.R. at 36 (citing *AT&T Universal Card Servs. v. Mercer* (*In re Mercer*), 246 F.3d 391, 407 (5th Cir. 2001)).

As the *Restatement (Second) of Torts* states:

A misrepresentation is fraudulent if the maker:

(a)    knows or believes that the matter is not as he represents it to be,

(b)    does not have the confidence in the accuracy of his representation that he
states or implies, or

(c)    knows that he does not have the basis for his representation that he states
or implies.

*Restatement (Second) of Torts* § 526 (1977).

The third element, that the debtor made the false representation with the intent to deceive

the creditor, requires a showing that the conduct was "'marked by moral turpitude' or that the

misconduct was an 'intentional wrong.'" *In re Moses*, 547 B.R. at 37 (quoting *New York v.

Suarez* (*In re Suarez*), 367 B.R. 332, 349-50 (Bankr. E.D.N.Y. 2007)). And "while recklessness

may be a sufficient basis to infer knowledge, it does not, without more, demonstrate a deliberate

intention to cheat or mislead." *In re Suarez*, 367 B.R. at 350. For example, "one court found

that a debtor's act of executing closing documents without reading them was reckless but did not

rise 'to the level of actual fraud or deceit as required by [Section] 523(a)(2)(A).'" *In re Moses*,

547 B.R. at 37-38 (quoting *Haney v. Copeland* (*In re Copeland*), 291 B.R. 740, 766 (Bankr. E.D.

Tenn. 2003)). Courts in the Second Circuit have also held that "'intent to deceive may be

inferred when the totality of the circumstances presents a picture of deceptive conduct by the

debtor, which indicates that he did intend to deceive and cheat the [creditor].'" *In re Suarez*, 367

B.R. at 349 (quoting *H.K. Deposit and Guar. Co. v. Shaheen* (*In re Shaheen*), 111 B.R. 48, 53

(S.D.N.Y. 1990)).

As to the fourth element, that the debtor justifiably relied on the false representation, the

Supreme Court has made clear that a creditor must "'use his senses, and cannot recover if he

blindly relies upon a misrepresentation the falsity of which would be patent to him if he had

utilized his opportunity to make a cursory examination or investigation.'" *Field v. Mans*, 516 U.S. 59, 71 (1995) (quoting *Restatement (Second) of Torts* § 541, Comment *a* (1977)).

And finally, as to the fifth element, that the creditor sustained a loss that was proximately caused by the debtor's false representation, "a plaintiff must establish a causal connection between the [false representation] and the loss suffered." *Moog Emps. Fed. Credit Union v. Kibler* (*In re Kibler*), 172 B.R. 740, 742 (Bankr. W.D.N.Y. 1994). For this element to be satisfied, the false representation must be a "material cause" for the loss suffered by the creditor, but "it need not be the only factor for the resulting debt to be nondischargeable." *Montalto v. Florence N. Sobel, Inc.* (*In re Sobel*), 37 B.R. 780, 786 (Bankr. E.D.N.Y. 1984).

*The Elements of a Bankruptcy Code Section 727(a)(4)(A) Claim*

Bankruptcy Code Section 727(a)(4)(A) addresses fraud and dishonesty in the bankruptcy process. As the Supreme Court has observed, "one of the 'main purpose[s]' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character.'" *Lamar*, *Archer* & *Cofrin*, *LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018) (quoting *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918)). But the relief of discharge is available only to honest debtors. In this regard, the debtor bears the responsibility to provide complete disclosure and cooperation in the bankruptcy process to warrant the discharge of their debt. And this means that a debtor may not pick and choose among the required information to be disclosed. Nor may a debtor omit disclosures that they prefer not to make, or view as pointless, immaterial, or irrelevant to the administration of the bankruptcy estate.

Bankruptcy Code Section 727(a)(4)(A) provides that a debtor's discharge may be denied if "the debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A). Many courts have held that "[b]ecause denial of a

discharge is a harsh sanction, courts construe these factors strictly in favor of the debtor." *Beer Sheva Realty Corp. v. Pongvitayapanu* (*In re Pongvitayapanu*), 487 B.R. 130, 139 (Bankr. E.D.N.Y. 2013) (citing *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996)).

To prevail on a Section 727(a)(4)(A) claim, the objecting party must plead and prove five elements: "(1) [the debtor] made statements under oath in connection with his bankruptcy case; (2) the statements were false; (3) [the debtor] knew the statements were false; (4) [the debtor] made the statements with fraudulent intent; and (5) the statements materially related to [the debtor's] bankruptcy case." *Web Holdings, LLC v. Cedillo* (*In re Cedillo*), 573 B.R. 451, 477 (Bankr. E.D.N.Y. 2017). *See Dubrowsky v. Estate of Perlbinder* (*In re Dubrowsky*), 244 B.R. 560, 572 (E.D.N.Y. 2000) (citing *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992)) (holding that gross discrepancies in the debtor's amended statement of financial affairs, together with the debtor's omissions of jointly owned property, established at a minimum a reckless disregard for the truth that was the functional equivalent of fraud under Section 727(a)(4)(A)); *Congress Talcott Corp. v. Sicari* (*In re Sicari*), 187 B.R. 861, 880 (Bankr. S.D.N.Y. 1994) (holding that the debtor's intentional concealment and failure to disclose certain transfers in his bankruptcy petition, and failure to disclose his equitable interest in transferred assets, amounted to a false oath under Section 727(a)(4)(A)).

As to the first element, that the debtor made a statement under oath in connection with their bankruptcy case, it is well established that "statements made during examination of a bankrupt [are] 'serious business.'" *In re Robinson*, 506 F.2d 1184, 1189 (2d Cir. 1974) (quoting *In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969)). *See Carver Fed. Sav. Bank v. Cedillo* (*In re*

*Cedillo*), 573 B.R. 405, 444 (Bankr. E.D.N.Y. 2017) (holding that statements made at a Section 341 meeting are made under "oath" for purposes of a Section 727(a)(4) claim.)

And the scope of this obligation extends beyond the statements made by the debtor at the Section 341 meeting. Instead, "[a] false statement or omission in the debtor's petition, schedules, or statements, satisfies the requirement of a false oath." *In re Pongvitayapanu*, 487 B.R. at 140. At the same time, some kind of oath or attestation is part of this picture, and not every remark, comment, or observation that is part of the record of a bankruptcy case is made under oath.

As to the second element, that the statements under oath were false, "[a] 'statement,' for purposes of discharge objection based on false oath or account, may be either an omission or an affirmative statement." *O'Hearn v. Gormally* (*In re Gormally*), 550 B.R. 27, 55 (Bankr. S.D.N.Y. 2016).

As to the third element, that the debtor knew the statements under oath were false, "[t]he statutory requirement of 'knowingly' mandates only that the defendant's act be voluntary and intentional – it does not require that a defendant know that the conduct violates the law." *Castillo v. Casado* (*In re Casado*), 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995). *See Bordonaro v. Fido's Fences , Inc.*, 565 B.R. 222, 233 (E.D.N.Y. 2017) (holding that based on the debtor's familiarity with his own finances, as well as his level of sophistication and education, it was reasonable to infer that when he filed his bankruptcy petition, he knew or should have known that the statements were false).

At the same time, the bare assertion that a debtor knew that their statement *knowingly* made a false statement is not, standing alone, sufficient to satisfy a plaintiff's obligation to allege this element to give rise to a plausible claim. As this Court and others have observed, ""A

statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth.""" *In re Cedillo*, 573 B.R. at 446 (quoting *United States Trustee v. Manno-DeGraw* (*In re Manno-DeGraw*), 2016 WL 3708062, at *2 (Bankr. E.D.N.Y. July 6, 2016) (quoting *Montley Corp. v. Maletta* (*In re Maletta*), 159 B.R. 108, 112 (Bankr. D. Conn. 1993))).

As to the fourth element, that the debtor made the statements under oath with fraudulent intent, it is well settled that for purposes of Section 727(a)(4), the intent to defraud may be inferred from circumstantial evidence or by inferences drawn from a course of conduct. *In re Dubrowsky*, 244 B.R. at 573 (citing *Zitwer v. Kelly* (*In re Kelly*), 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)).

To discern intent under the reckless disregard standard, courts consider several factors, including "'(a) the serious nature of the information sought and the necessary attention to detail and accuracy in answering; (b) a debtor's 'lack of financial sophistication' as evidenced by his or her professional background; and (c) whether a debtor repeatedly blamed recurrent errors on careless or failed to take advantage of an opportunity to clarify or correct inconsistencies.'" *Lisa Ng v. Adler* (*In re Adler*), 494 B.R. 43, 77 (2013) (internal quotations and citations omitted).

Fraudulent intent may also "be established by a showing of actual fraud, through evidence of the traditional badges of fraud, or by the debtor's reckless disregard for the truth of his statements." *Capital One Equip. Fin. Corp. v. Singh* (*In re Singh*), 585 B.R. 330, 338-39 (Bankr. E.D.N.Y. 2018) (citing *In re Adler*, 494 B.R. at 77).

And finally, as to the fifth element, that the statements under oath related materially to the debtor's bankruptcy case, courts within and outside the Second Circuit agree that the test for materiality "is whether the false statement relates to the debtor's business transactions or estate

23

or whether it is pertinent to the discovery of assets or the existence or disposition of property."

*Scheidelman v. Henderson* (*In re Henderson*), 423 B.R. 598, 618 (Bankr. N.D.N.Y. 2010) (citing

*Wisell v. Wisell* (*In re Wisell*), 2007 WL 2463268, at *9 (D. Vt. Aug. 28, 2007)).  *See Chalik v.*

*Moorefield* (*In re Chalik*), 748 F.2d 616, 618 (11th Cir. 1984) (per curiam) (holding that

materiality is established if the debtor's statement "bears a relationship to the debtor's business

transactions or estate, or concerns the discovery of assets, business dealings, or the existence and

disposition of the debtor's property.")  But denial of discharge is a harsh remedy, and an

immaterial or irrelevant statement, even if false, does not satisfy the requirements of this

element.  At the same time, "'materiality does not require a showing that the creditors were

prejudiced by the false statement.'"  *Carlucci & Legum v. Murray* (*In re Murray*), 249 B.R. 223,

229 (E.D.N.Y. 2000) (quoting *In re Robinson*, 506 F.2d at 1188).

## Discussion

Mr. Venticinque's Motion to Dismiss calls for the Court to consider the allegations of the

Amended Complaint and to measure them against the elements of these claims, to determine

whether Ms. Kaschner states plausible claims for relief.  First, the Court considers whether Mr.

Venticinque has shown that Ms. Kaschner does not state a plausible claim that his debt to her

should be excluded from his bankruptcy discharge under Bankruptcy Code Section 523(a)(2)(A).

And next, the Court considers whether Mr. Venticinque has shown that Ms. Kaschner does not

state a plausible claim that his discharge should be denied in its entirety under Bankruptcy Code

Section 727(a)(4)(A).

### *Whether Ms. Kaschner States a Plausible Claim Under Bankruptcy Code Section 523(a)(2)(A)*

In her first cause of action, under Bankruptcy Code Section 523(a)(2)(A), Ms. Kaschner

seeks a declaration that Mr. Venticinque's debt to her, as set forth in the New Jersey State Court

Judgment, is nondischargeable because he obtained funds from her in connection with the Project by false pretenses, false representation, or actual fraud. Am. Compl. ¶ 40.

Ms. Kaschner must allege five elements to state a plausible dischargeability claim under Section 523(a)(2)(A). These are first, that Mr. Venticinque made a false representation; second, that he knew the representation was false at the time it was made; third, that he made the false representation with the intent to deceive her; fourth, that she justifiably relied on the representation; and finally, that she sustained a loss that was proximately caused by the false representation. *See In re Macias*, 324 B.R. at 187-89 (identifying five elements to state a plausible dischargeability claim under Section 523(a)(2)(A)). And because this claim triggers the particular and heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b), Ms. Kaschner must specify the assertedly fraudulent statements, identify the speaker of the fraudulent statements, state where and when the fraudulent statements were made, and explain why the statements were fraudulent. *Rombach*, 355 F. 3d at 170.

And finally, at this stage in this adversary proceeding, in considering Mr. Venticinque's Motion to Dismiss, the Court does not consider whether Ms. Kaschner *has shown*, or *is likely to show*, that she can prove each of the elements of her claim. Rather, and as noted above, on a motion to dismiss, the Court must accept the factual allegations in the Amended Complaint as true, and must determine whether, if true, they establish a plausible claim for relief.

That is, when considering a motion to dismiss under Rule 12(b)(6), the court should "'accept[] all factual allegations as true, and draw [] all reasonable inferences in the plaintiff's favor.'" *DiFolco*, 622 F.3d at 110-11 (alteration in original) (quoting *Shomo*, 579 F.3d at 183). *See Mills*, 12 F.3d at 1174 (accepting as true the complaint's factual allegations and drawing inferences in the pleader's favor).

At the same time, courts recognize a distinction between factual allegations and legal conclusions.  In deciding a motion to dismiss, a court is not required to accept as true those allegations that amount to no more than legal conclusions.  As the Supreme Court has observed, "the tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S at 678.  *See Twombly*, 550 U.S. at 555.  The Supreme Court also noted that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

    <u>Whether Ms. Kaschner adequately alleges that Mr. Venticinque made a false representation.</u>  The first element that Ms. Kaschner must allege to state a plausible Section 523(a)(2)(A) claim is that Mr. Venticinque made a false representation to her.  *In re Moses*, 547 B.R. at 36 (citing *In re Macias*, 324 B.R. at 187).  In this context, one court has observed that a false representation means that "'(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant.'" *In re Deutsch*, 575 B.R. at 599 (quoting *Frishberg v. Janac* (*In re Janac*), 407 B.R. at 552).

Here, Ms. Kaschner alleges in the Amended Complaint that:

- Mr. Venticinque falsely promised Ms. Kaschner that the Project would be completed within nine months from the start date (Am. Compl. ¶ 40(1));

- Mr. Venticinque falsely represented to Ms. Kaschner that he would be the general contractor and construction manager for the Project (Am. Compl. ¶ 40(3)(B)).

- Mr. Venticinque remitted checks to Ms. Kaschner when he was aware that they would be returned for insufficient funds (Am. Compl. ¶ 40(1));

- Mr. Venticinque falsely represented to Ms. Kaschner that the appliances for which she had paid were in the process of delivery (Am. Compl. ¶ 40(1));

- Mr. Venticinque falsely represented that new flooring would be delivered and installed (Am. Compl. ¶ 40(1)); and

- Mr. Venticinque falsely represented to Ms. Kaschner that he was current with payment of his employees when they had not been paid for many weeks (Am. Compl. ¶ 40(1)).

Am. Compl. ¶¶ 40(1), 40(3)(B).

Mr. Venticinque argues that he told Ms. Kaschner that as to two checks from Vensa, she should wait until after the sale of the Teaneck Property to deposit them.  Def. Aff. ¶ 17.  As to the $30,000 check made from Ms. Venticinque's account, he argues that he provided Ms. Kaschner with an additional check for the same sum, and for that reason, he placed a stop payment on the first check.  Def. Aff. ¶ 18.  As to the $40,000 check made from Ms. Venticinque's account, he argues that this check "had also been post dated to [his] recollection back in [December] and [he] should have asked for this check back after the closing."  Def. Aff. ¶ 17.  Mr. Venticinque also argues that under the Contract, he was not required to provide the appliances for the Project.  Def. Aff. ¶ 11.  And finally, he argues that Ms. Kaschner's allegations concerning whether he paid his employees amount to nothing more than a breach of contract claim.  Mot. at 4.

At the pleadings stage, on this Motion to Dismiss, Ms. Kaschner is not required to *prove* that Mr. Venticinque made false statements to assert this element of her claim.  Rather, she is required only to *allege* facts sufficient to show that, if they are proved, he made false statements. And here, a review of the Amended Complaint shows that Ms. Kaschner has alleged that Mr. Venticinque made false statements with the intent to deceive her for the purpose of having her turn over money to him.  These include alleged false statements by Mr. Venticinque about the

Project completion time, his role as general contractor and construction manager, the returned

checks, the status of the appliance deliveries, that the checks were backed by good funds, that

appliances had been ordered, that new flooring would be delivered and installed, and that he was

current with the payment of his employees.  Am. Compl. ¶¶ 40(1), 40(3)(B).

To be sure, this is different than finding that Ms. Kaschner has proved those allegations –

but that is a question for another day.

For these reasons, the Court concludes that Ms. Kaschner has adequately alleged the first

element of her Section 523(a)(2)(A) dischargeability claim, that Mr. Venticinque made false

statements.

<u>Whether Ms. Kaschner adequately alleges that, at the time Mr. Venticinque made the</u>

<u>representations, he knew that they were false.</u>  The second element that Ms. Kaschner must

allege to state a plausible Section 523(a)(2)(A) claim is that Mr. Venticinque knew or believed

that the matter was not as represented, did not have confidence in the accuracy of his

representations, or knew that he did not have a basis to make the representations.  *In re Moses*,

547 B.R. at 36 (citing *In re Macias*, 324 B.R. at 187).

As set forth in the *Restatement* (*Second*) *of Torts*:

A misrepresentation is fraudulent if the maker

(a)     knows or believes that the matter is not as he represents it to be,

(b)     does not have the confidence in the accuracy of his representation that he
        states or implies, or

(c)     knows that he does not have the basis for his representation that he states
        or implies.

*Restatement* (*Second*) *of Torts* § 526 (1977).

In the Amended Complaint, Ms. Kaschner alleges that Mr. Venticinque could not complete the Project within the nine-month deadline because, among other reasons, he was also working on a project in Union City at the same time, and therefore knew that his promise to complete the Project within nine months was false.  Am. Compl. ¶ 40.  Similarly, she alleges that Mr. Venticinque could not be the general contractor on the Project because of his work in Union City, and therefore knew at the time he told her he would be the general contractor on the project, that this statement was false.  Am. Compl. ¶ 40(3)(B).  In his affidavit in support of the Motion to Dismiss, Mr. Venticinque states that due to the constant change orders, among other reasons, the Project could not be completed within the planned nine-month time window.  Def. Aff. ¶ 7.

Additionally, Ms. Kaschner alleges that Mr. Venticinque knew that he was making a false representation when he issued checks to her that were returned for insufficient funds.  Am. Compl. ¶ 40(3)(C).  Mr. Venticinque argues that he did not knowingly make a false representation because he advised Ms. Kaschner not to deposit the checks, as he was expecting funds from the sale of the Teaneck Property, and therefore, she should have known that the checks were not backed by sufficient funds.  Mot. at 3.

In the Amended Complaint, Ms. Kaschner alleges that when Mr. Venticinque told her that appliances for the Project were in the delivery process, he knew that this was a false statement.  She also alleges that when she contacted the supplier directly, she learned that Mr. Venticinque had not placed any purchase orders for the appliances.  Am. Compl. ¶ 40(3)(E). And in her opposition to the Motion to Dismiss, Ms. Kaschner includes a proposal dated May 26, 2004, made to Vensa by Russell Robarge, the GE Area Sales Manager, in further support of

these allegations.  Am. Compl. ¶ 40(3)(E); Opp. Exh. B.  Mr. Venticinque argues that he was not required either to purchase or to deliver any appliances under the Contract.  Def. Aff. ¶¶ 11-12.

Additionally, Ms. Kaschner alleges, in substance, that when Mr. Venticinque agreed to deliver and install new flooring, as specified under the Contract, he knew that this was a false statement.  Mr. Venticinque argues that this amounts to nothing more than a breach of contract claim, and cannot be used to support an exception to discharge claim.  Mot. at 4.

Further, Ms. Kaschner also alleges that Mr. Venticinque knew at the time he told her that he was current with payment of his employees that this statement was false.  Am. Compl. ¶ 40(3)(D).  She alleges that Mr. Venticinque's employees informed her that they were leaving the Project because they had not been paid.  *Id.*  Mr. Venticinque argues that, here too, this allegation amounts to nothing more than a breach of contract claim.  Mot. at 4.

Here again, at the pleadings stage, on this Motion to Dismiss, Ms. Kaschner is not required to *prove* that Mr. Venticinque knowingly made false statements to her in order to state this element of her claim.  Rather, she is required only to *allege* facts sufficient to show that, if they are proved, he knowingly made such statements.  And here, a review of the Amended Complaint shows that Ms. Kaschner has alleged that when Mr. Venticinque told her that he would be able to complete the Project within the nine-month deadline, that he would be the general contractor on the project, that he was current with the payment of his employees, that new flooring would be delivered and installed, and that appliances for the Project would be delivered, he knew that these statements were false.  And here too, this is different than finding that Ms. Kaschner has proved those allegations – but that is a question for another day.

For these reasons, the Court concludes that Ms. Kaschner has adequately alleged the second element of her Section 523(a)(2)(A) dischargeability claim, that when Mr. Venticinque made false statements to her, he knew that they were false.

Whether Ms. Kaschner adequately alleges that Mr. Venticinque made the false representations with the intent to deceive.  The third element that Ms. Kaschner must allege to state a plausible Section 523(a)(2)(A) claim is that at the time Mr. Venticinque made the false representations, he did so with the intent to deceive.  Here again, this Court and others have recognized that a debtor's intent may be inferred from the totality of the circumstances, because direct proof of a debtor's state of mind is generally not available.  As one court has stated, "'intent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor].'"  *In re Suarez*, 367 B.R. at 349 (quoting *In re Shaheen*, 111 B.R. at 53).

In the Amended Complaint, Ms. Kaschner alleges that Mr. Venticinque intended to deceive her when he agreed to be a general contractor on the project, as well as to complete the Project within the nine-month deadline, because at that time he had also commenced work on the Union City Condominium Project.  Am. Compl. ¶ 40(2)(A).  She also alleges that he made a false representation with the intent to deceive when he wrote her checks that were returned for insufficient funds.  Am. Compl. ¶ 40(3)(C).  Mr. Venticinque argues that Ms. Kaschner's allegations with respect to his statements concerning the completion of the Project in accordance with the Contract show nothing more than a breach of contract claim.  Mot. at 4.  In addition, he argues that following the first occasion that a check was returned for insufficient funds, Ms. Kaschner should have insisted that he make subsequent payments to her with certified funds.  Mot. at 4.

In the Amended Complaint, Ms. Kaschner also alleges that Mr. Venticinque regularly reassured her that the appliances that she ordered were in the process of being delivered, but a call to the appliance supplier revealed that he had never ordered any appliances.  Am. Compl. ¶ 40(3)(E).  She further alleges, in substance, that he intended to deceive her when he stated that he would supply all necessary materials, including new flooring.  Am. Compl. ¶ 40(3)(F).  Mr. Venticinque responds that he was never obliged under the original contract to purchase and deliver any appliances.  Def. Aff. ¶ 12.

Further, Ms. Kaschner alleges that Mr. Venticinque intended to deceive her when he represented to her that he was current with the payment of his employees.  Am. Compl. ¶ 40(3)(D).  She alleges that his employees informed her that they were leaving because he had not paid them in six weeks.  *Id*.  Mr. Venticinque argues that not paying his employees amounts to nothing more than a breach of his contractual obligations.  Mot. at 4.

As to this element as well, at the pleadings stage, on this Motion to Dismiss, Ms. Kaschner is not required to *prove* that Mr. Venticinque made false statements with the intent to deceive her in order to state this element of her claim.  Rather, she is required only to *allege* facts sufficient to show that, if they are proved, he made statements with that intent.  Here, a review of the Amended Complaint shows that Ms. Kaschner has alleged that that Mr. Venticinque made false representations with the intent to deceive with respect to his agreement to be the general contractor on the Project, his promise to complete the Project within the nine-month deadline, his assurance that the checks he issued would be backed by sufficient funds, and his promise to deliver certain appliances, and his promise in the Contract to deliver and install new flooring. And again, this is different than finding that Ms. Kaschner has proved those allegations – but that is a question for another day.

For these reasons, the Court concludes that Ms. Kaschner has adequately alleged the third element of her Section 523(a)(2)(A) dischargeability claim, that Mr. Venticinque made the false representations with the intent to deceive.

> Whether Ms. Kaschner adequately alleges that she justifiably relied on Mr. Venticinque's false statements. The fourth element that Ms. Kaschner must allege to state a plausible Section 523(a)(2)(A) claim is that she relied on Mr. Venticinque's false statements. As the Supreme Court has held in this context, a creditor is expected to "'use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Field*, 516 U.S. at 71 (quoting *Restatement (Second) of Torts* § 541, Comment *a* (1977)).

In the Amended Complaint, Ms. Kaschner alleges that she justifiably relied on Mr. Venticinque's representation that he was a general contractor. Am. Compl. ¶ 40(4)(A). She also alleges that she justifiably relied on his representations that the checks he issued to her would be backed by sufficient funds. Am. Compl. ¶ 40(4)(D). She alleges that she was entitled to rely on Mr. Venticinque's representations that appliances would be delivered and new flooring would be delivered and installed. Am. Compl. ¶ 40(4)(F). And she alleges, in substance, that in reliance on his proposal to purchase and deliver appliances for the Project, she advanced and provided to him the funds necessary to do so, and again, that her reliance was justified. *Id.* Finally, she alleges that she justifiably relied on Mr. Venticinque's representation that he was current with payment of his employees. Am. Compl. ¶ 40(4)(E).

As with the third element, Mr. Venticinque argues, in substance, that Ms. Kaschner could not have reasonably relied on these statements, and that these allegations amount, at the most, to a series of breach of contract claims. Mot. at 4. He also argues that after the first check was

dishonored, she could not have reasonably relied on them, and should have required payments to be made with certified funds. *Id*. And Mr. Venticinque states that with respect to the two checks that were returned for insufficient funds, he advised Ms. Kaschner to wait until after the sale of the Teaneck Property before to deposit the checks. Def. Aff. ¶ 17. With respect to two other checks, he states that he placed a "stop payment" on one check because it was a duplicate, and that the other check was postdated and that he should have requested that it be returned after the closing on the Teaneck Property. Def. Aff. ¶¶ 17-18.

Here again, the Court notes that at the pleadings stage, it does not consider whether Ms. Kaschner has *proved* that she justifiably relied on Mr. Venticinque's assertedly false representations. Rather, the question that must be answered is whether in the Amended Complaint, these matters have been alleged to give rise to a plausible claim. And here, a review of the Amended Complaint shows that Ms. Kaschner has alleged that she reasonably relied on Mr. Venticinque's statements with respect to his agreement to be the general contractor on the Project, his promise to complete the Project within the nine-month deadline, his promise that the checks that he provided would be backed by sufficient funds, his agreement to deliver certain appliances, and his promise to install new flooring. And here as well, the question of proof is for another day.

For these reasons, the Court concludes that Ms. Kaschner has adequately alleged the fourth element of her Section 523(a)(2)(A) dischargeability claim, that she reasonably relied on Mr. Venticinque's false statements.

<u>Whether Ms. Kaschner adequately alleges that Mr. Venticinque's false statements proximately caused her to sustain a loss or damages.</u> The final element that Ms. Kaschner must

allege to state a plausible Section 523(a)(2)(A) claim is that Mr. Venticinque's false statements proximately caused her to sustain a loss or damages.

In the Amended Complaint, Ms. Kaschner alleges that as a result of Mr. Venticinque's abandonment of the Project, it "took an additional [twelve] months to complete" and that Certificates of Occupancy were not obtained until December 2005.  Am. Compl. ¶ 9.  *See* Am. Compl. ¶¶ 11, 16, 18, 40.  And she alleges that she was required to hire other contractors and laborers at an additional cost of $345,941 for goods and services that Mr. Venticinque was required to provide under the Contract.  Am. Compl. ¶ 17.  *See* Am. Compl. ¶¶ 11, 16, 18, 40. She also alleges that because the Project was not completed by the nine-month deadline, she was unable to sell or rent the condominium units for the 2005 summer season, and suffered damages totaling $477,000.  Am. Compl. ¶ 40(5).  And she points to the Judgment entered in the New Jersey State Court Action awarding her treble damages in the amount of $857,886.12, under New Jersey's Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*, and the New Jersey Administrative Code, Section 13:45A-16.1, and alleges that this, too, is a measure of the damages that she has incurred.  Am. Compl. Exh. D.

On a motion to dismiss, the Court considers whether each element of a claim has been alleged to give rise to a plausible claim.  And here, a review of the Amended Complaint shows that Ms. Kaschner has alleged that she has suffered a loss or damages that were proximately caused by Mr. Venticinque's asserted false statements.  She has alleged that as a consequence of his false representations, the Project experienced significant delays and significant additional costs.  And she has also alleged, in substance, that these damages form the basis for the Judgment that was entered in the New Jersey State Court Action.

For these reasons, the Court concludes that Ms. Kaschner has adequately alleged the fifth

element of her Section 523(a)(2)(A) dischargeability claim, that Mr. Venticinque's false statements proximately caused her to sustain a loss or damages.

*Whether Ms. Kaschner's Section 523(a)(2)(A) Claim Satisfies the Pleading Requirements of Rule 9(b)*

Because Ms. Kaschner's Section 523(a)(2)(A) dischargeability claim sounds in fraud, it is necessary also to consider whether her claim meets the heightened pleading standard for fraud claims established by Federal Rule of Civil Procedure 9(b). That is, the Court must determine whether the Amended Complaint "state[s] with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

As the Second Circuit has held, a complaint alleging fraud must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Homaidan v. SLM Corp.* (*In re Homaidan*), 596 B.R. 86, 95 (Bankr. E.D.N.Y. 2019) (quoting *Rombach*, 355 F.3d at 170 (internal citations omitted)), *aff'd*, 3 F.4th 595 (2d Cir. 2021).

Here, a review of the Amended Complaint shows that Ms. Kaschner has specified the statements that she considers to be fraudulent. These are:

- "The Project would be completed in nine months" (Am. Compl. ¶ 40(1));

- "Mr. Venticinque would be the general contractor and construction manager for the Project" (Am. Compl. ¶ 40(3)(B));

- "The checks that Mr. Venticinque issued were backed by adequate funds" (Am. Compl. ¶ 40(1));

- "The "'appliance packages were in transit and being delivered but the truck had broken down'"" (quoting Am. Compl. ¶ 40(1)(D));

36

- "New flooring would be delivered and installed" (Am. Compl. ¶ 40(1)(E)); and

- "Mr. Venticinque was current with payment of his employees" (Am. Compl. ¶ 40(1)(D)).

That is, Ms. Kaschner has satisfied the first particularity requirement of Rule 9(b) adequately to allege a fraud claim, because she identifies the specific statements by Mr. Venticinque that she asserts are fraudulent.

Next, a review of the Amended Complaint similarly shows that Ms. Kaschner identifies the maker of the allegedly fraudulent statements. Am. Compl. ¶ 40. That is, she alleges that Mr. Venticinque made the assertedly fraudulent statements about the Project completion date, his role as the Project's general contractor and construction manager, the checks, the delivery status of the appliances, the delivery and installation of new flooring, and the compensation of his employees. Am. Compl. ¶¶ 40(1), 40(1)(C), 40(3)(B). As a consequence, Ms. Kaschner has satisfied the second particularity requirement of Rule 9(b) adequately to allege a fraud claim, because she identifies Mr. Venticinque as the maker of the allegedly fraudulent statements.

In addition, a review of the Amended Complaint confirms that Ms. Kaschner states where and when several – but not all – of the allegedly fraudulent statements were made. She alleges that, on December 10, 2003, Mr. Venticinque entered into a contract with her in which he agreed to be the general contractor on the Project, and that the Project would be completed in nine months. Am. Compl. ¶ 7. She also alleges that in that Contract, he agreed to deliver and install new flooring. *Id*. And Ms. Kaschner alleges that Mr. Venticinque made the false statements regarding the delivery status of the appliances on the expected date of delivery in December 2004. Am. Compl. ¶ 40(2)(A).

But a review of the Amended Complaint also shows that Ms. Kaschner does not allege where and when Mr. Venticinque made false statements with respect to whether he was current with payment of his employees.

So, Ms. Kaschner has satisfied the third particularity requirement of Rule 9(b) adequately to allege a fraud claim, because she identifies where and when Mr. Venticinque made the assertedly fraudulent statements about the completion of the Project within nine months, his role as general contractor and construction manager, that the checks were backed by good funds, that appliances had been ordered, and that new flooring would be delivered and installed.  But she has not done so with respect to his alleged fraudulent statement that he was current with the payment of his employees.

Finally, a review of the Amended Complaint shows that Ms. Kaschner offers explanations as to why Mr. Venticinque's statements were fraudulent.  She alleges that his representations that he would be the general contractor on the Project and that the Project would be completed within nine months were fraudulent, because he had also started the Union City Condominium Project.  Am. Compl. ¶ 40(2)(A).  She alleges that his representations as to the checks were fraudulent because they were repeatedly issued against insufficient funds, or on closed accounts.  Am. Compl. ¶ 40(3)(C).  She also alleges that his statements about the delivery status of the appliances were fraudulent because, as she learned when she called GE Appliances directly, Mr. Venticinque had not ordered them.  Am. Compl. ¶ 40(3)(E).  Ms. Kaschner alleges that Mr. Venticinque represented to her that the proper flooring was delivered and installed so that she would advance him funds, but in fact, the requested flooring was not installed.  Am. Compl. ¶ 40(3)(F).  And Ms. Kaschner alleges that Mr. Venticinque represented that he was

current with the payment of his employees when he had not paid them for six weeks.  Am. Compl. ¶ 40(3)(D).

That is, Ms. Kaschner has satisfied the fourth particularity requirement of Rule 9(b) adequately to allege a fraud claim, because she explains in the Amended Complaint why Mr. Venticinque's alleged statements – about the Project completion time, his role as general contractor and construction manager, the returned checks, the status of the appliance deliveries, that the checks were backed by good funds, that appliances had been ordered, that new flooring would be delivered and installed, and that he was current with the payment of his employees – were fraudulent.

In sum, Ms. Kaschner's Section 523(a)(2)(A) claim meets the heightened pleading standard for fraud claims established by Federal Rule of Civil Procedure 9(b) for five of the six alleged false statements.  In the Amended Complaint, she specifies six alleged false statements made by Mr. Venticinque; she identifies Mr. Venticinque as the speaker of each of the six false statements; she states the time and place of all of the alleged false statements but one – the representation that he was current with payment of his employees; and she offers an explanation of why each identified alleged false statement is fraudulent.  That is, she has pleaded with particularity that Mr. Venticinque made false representations about the completion time of the Project, his role as the general contractor and construction manager for the Project, the adequacy of funds backing the checks he issued, the status of the delivery of the appliances, and that new flooring would be delivered and installed.

*          *          *

For all of these reasons, the Court finds that Ms. Kaschner has alleged a plausible claim under Bankruptcy Code Section 523(a)(2)(A) that Mr. Venticinque's debt to her should be

excluded from his discharge, as to five of the alleged false representations identified in the
Amended Complaint.  These are:

- The Project would be completed in nine months (Am. Compl. ¶ 40(1));

- Mr. Venticinque would be the general contractor and construction manager for the
  Project (Am. Compl. ¶ 40(3)(B));

- The checks that Mr. Venticinque issued were backed by adequate funds (Am. Compl.
  ¶ 40(1)(H));

- The "'appliance packages were in transit and being delivered but the truck had broken
  down'" (quoting Am. Compl. ¶ 40(1)(C)); and

- New flooring would be delivered and installed (Am. Compl. ¶ 40(1)(E)).

That is, as to these five statements, Ms. Kaschner has alleged facts in the Amended
Complaint that, if proved, would establish each of the elements of the claim and give rise to a
plausible claim – (i), that Mr. Venticinque made a false representation; (ii), that he knew the
representation was false at the time it was made; (iii), that he made the false representation with
the intent to deceive her; (iv), that she justifiably relied on the representation; and finally, (v) that
she sustained a loss that was proximately caused by the false representation.  *See In re Macias*,
324 B.R. at 187-88.  And she has done so with sufficient particularity to meet the standards of
Rule 9(b) as to claims that are grounded in fraud, as to five of the assertedly false statements.

To this extent, and based on the entire record, the Motion to Dismiss the Section
523(a)(2)(A) claim is denied in part.

As to one of the assertedly false statements, that Mr. Venticinque was current with his
employees' pay (Am. Compl. ¶ 40(1)(D)), Ms. Kaschner has not satisfied Rule 9(b)'s
particularity requirements.

To this extent, and based on the entire record, the Motion to Dismiss this claim is granted in part.

*Whether Ms. Kaschner States a Plausible Claim Under Bankruptcy Code Section 727(a)(4)(A)*

In her second cause of action, under Bankruptcy Code Section 727(a)(4)(A), Ms. Kaschner seeks a declaration denying Mr. Venticinque's discharge because he "knowingly or fraudulently, in or in connection with the [bankruptcy] case, made a false oath or account." 11 U.S.C. § 727(a)(4)(A). *See* Am. Compl. ¶ 42.

Ms. Kaschner must allege five elements in order to state a plausible claim to deny Mr. Venticinque's discharge under Section 727(a)(4)(A). These are first, that he "made statements under oath in connection with his bankruptcy case;" second, that "the statements were false;" third, that he "knew the statements were false;" fourth, that he "made the statements with fraudulent intent;" and finally, that "the statements materially related to [the debtor's] bankruptcy case." *In re Cedillo*, 573 B.R. at 477. *See In re Dubrowsky*, 244 B.R. at 572 (citing *In re Beaubouef*, 966 F.2d at 178; *In re Sicari*, 187 B.R. at 880).

Here again, at this stage in this adversary proceeding, in considering Mr. Venticinque's Motion to Dismiss, the Court does not consider whether Ms. Kaschner *has shown*, or *is likely to show*, that she can prove each of the elements of her claim. Instead, on a motion to dismiss, the Court must accept the factual allegations in the Amended Complaint as true, and must determine whether, if true, they establish a plausible claim for relief.

Whether Ms. Kaschner adequately alleges that Mr. Venticinque made a statement under oath in connection with his bankruptcy case. The first element that Ms. Kaschner must allege to state a plausible Section 727(a)(4) claim is that Mr. Venticinque made a statement under oath in connection with his bankruptcy case. *In re Cedillo*, 573 B.R. at 477. Courts agree that a

debtor's statements at the Section 341 meeting, which are made under oath, are sufficient to meet this element of a Section 727(a)(4)(A) claim.  *See, e.g.*, *In re Cedillo*, 573 B.R. at 444 (holding that the debtor's statements at a Section 341 meeting are statements "under oath" in connection with the bankruptcy case for purposes of a Section 727(a)(4)(A) claim).

At the same time, not every statement made in a bankruptcy case is made under oath, and Section 727(a)(4)(A) reaches only those statements that are made in this way.

In the Amended Complaint, Ms. Kaschner alleges that Mr. Venticinque was examined and made statements under oath at the Section 341 Meeting in this bankruptcy case.  See Am. Compl. ¶ 2.  These are:

- Mr. Venticinque's statement that he had no knowledge of Mr. Chouraqui (Am. Compl. ¶ 44);

- Mr. Venticinque's statement that he has never done business in Union City (Am. Compl. ¶ 45);

- Mr. Venticinque's statement that he did not have any knowledge of the Judgment until some time in 2016 or 2017, when he attempted to purchase real property (Am. Compl. ¶ 47);

- Mr. Venticinque's statement that he spent five years in jail (Am. Compl. ¶ 48);

- Mr. Venticinque's statement that he has no knowledge of Tona Construction (Am. Compl. ¶ 46); and

- Mr. Venticinque's statement that he has never had accounts at Ameriprise Financial or E-Trade (Am. Compl. ¶ 49).

Am. Compl. ¶¶ 44-49.

Ms. Kaschner also alleges that Mr. Venticinque attended and made statements at the January 14 Pre-Trial Conference, and points to a statement that he made at that conference – specifically, his statement that "[t]here are no checks." Am. Compl. ¶ 43. And she alleges that this statement was made under oath. *Id*.

Of course, and here again, at the pleadings stage, on this Motion to Dismiss, Ms. Kaschner is not required to *prove* that Mr. Venticinque made a statement under oath in connection with his bankruptcy case in order to state this element of her claim. Rather, she is required only to *allege* facts sufficient to show that, if they are proved, he did so.

Here, it appears from the record that to the extent that Ms. Kaschner has identified statements made by Mr. Venticinque at the Section 341 Meeting, she has alleged facts sufficient to state the first element of a plausible Section 727(a)(4)(A) claim, that Mr. Venticinque made a statement under oath in connection with his bankruptcy case.

But a review of the record and the Amended Complaint also shows that her allegations with respect to Mr. Venticinque's statement at the January 14 Pre-Trial Conference are in a different category – because the record of that proceeding, which was held before this Court, shows that Mr. Venticinque did not make that statement under oath. To be sure, it is essential for parties, whether represented by counsel or proceeding *pro se*, to respect the court's processes, and statements on the record of a court hearing are serious indeed. Candor to the Court is both expected and required. *See, e.g.*, Model R. Prof. Conduct 3.3 (ABA 2020). But the requirements of a Section 727(a)(4)(A) claim are precise, and a statement under oath is one of those requirements. And as to this statement, Ms. Kaschner has not alleged that it was made under oath. For that reason, as to this statement, the factual allegations do not give rise to a plausible claim.

For these reasons, the Court concludes that Ms. Kaschner has adequately alleged the first element of her Section 727(a)(4)(A) denial of discharge claim, that Mr. Venticinque made a statement under oath in connection with his bankruptcy case, to the extent that she has identified statements that Mr. Venticinque made under oath in his Section 341 Meeting.  But she has not done so with respect to his statement at the January 14 Pre-Trial Conference.

<u>Whether Ms. Kaschner adequately alleges that Mr. Venticinque's statements under oath in connection with his bankruptcy case were false.</u>  The second element that Ms. Kaschner must allege to state a plausible Section 727(a)(4) claim is that Mr. Venticinque's statements made under oath in connection with his bankruptcy case were false.  *In re Cedillo*, 573 B.R. at 477.

In the Amended Complaint, Ms. Kaschner alleges that several statements made by Mr. Venticinque at his Section 341 Meeting were false.  As noted above, these are:

- Mr. Venticinque's statement that he had no knowledge of Mr. Chouraqui (Am. Compl. ¶¶ 28, 44);

- Mr. Venticinque's statement that he has never done business in Union City (Am. Compl. ¶ 45);

- Mr. Venticinque's statement that he did not have any knowledge of the Judgment until some time in 2016 or 2017, when he attempted to purchase real property (Am. Compl. ¶¶ 31-34, 47);

- Mr. Venticinque's statement that he spent five years in jail (Am. Compl. ¶ 48);

- Mr. Venticinque's statement that he has no knowledge of Tona Construction (Am. Compl. ¶¶ 30, 46); and

- Mr. Venticinque's statement that he has never had accounts at Ameriprise Financial or E-Trade (Am. Compl. ¶ 49).

Am. Compl. ¶¶ 44-49.

As to each of these statements made by Mr. Venticinque at the Section 341 Meeting, Ms. Kaschner also alleges reasons why the statement is false.  Specifically:

- As to his statement that he had no knowledge of Mr. Chouraqui, Ms. Kaschner alleges that this statement is false because, among other reasons, Mr. Venticinque and Mr. Chouraqui were business partners in the Union City Condominium Project. Am. Compl. ¶¶ 28, 44.

- As to his statement that he has never done business in Union City, she alleges that this statement is false because, among other reasons, background checks and his involvement with the Union City Condominium Project show otherwise.  Am. Compl. ¶ 45.

- As to his statement that he did not have any knowledge of the Judgment until 2016 or 2017, she alleges that this statement is false because, among other reasons, he was notified of this action by a summons and complaint.  Am. Compl. ¶¶ 31-34, 47.

- As to his statement that he spent five years in jail, she alleges that this statement is false because, among other reasons, background searches that she performed show that he spent a little over nine months, not five years, in jail.  Am. Compl. ¶ 48.

- As to his statement that he has no knowledge of Tona Construction, she alleges that this is contradicted by his LinkedIn account, which states that he was a project manager at the firm.  Am. Compl. ¶¶ 30, 46.

- And as to his statement that he has never had accounts at Ameriprise Financial or E-Trade, she alleges that this is false because, among other reasons, Mr. Venticinque's credit history from July 2017 shows otherwise.  Am. Compl. ¶ 49.

In addition, Ms. Kaschner alleges that Mr. Venticinque made a false statement at the January 14 Pre-Trial Conference – his statement at that proceeding that "[t]here are no checks." Am. Compl. ¶ 43.  That statement, unlike Mr. Venticinque's alleged statements at the Section 341 Meeting, was not made under oath.  And while every statement made on the record of a court proceeding is important, there is a difference between a statement and a statement under oath – and one is within the scope of Section 727(a)(4)(A), but the other is not.

Here too, at the pleadings stage, on this Motion to Dismiss, Ms. Kaschner is not required to *prove* that Mr. Venticinque made a false statement under oath in connection with his bankruptcy case in order to state this element of her claim.  Rather, she is required only to *allege* facts sufficient to show that, if they are proved, he did so.

For these reasons, the Court concludes that Ms. Kaschner has adequately alleged the second element of her Section 727(a)(4)(A) denial of discharge claim, that Mr. Venticinque made a false statement under oath in connection with his bankruptcy case.  But she has done so only with respect to Mr. Venticinque's statements at his Section 341 Meeting, and not with respect to his statement at the January 14 Pre-Trial Conference.

Whether Ms. Kaschner adequately alleges that, at the time Mr. Venticinque made the representations under oath in connection with his bankruptcy case, he knew that they were false. The third element that Ms. Kaschner must allege to state a plausible Section 727(a)(4)(A) claim is that Mr. Venticinque knew that his statements under oath in his bankruptcy case were false. """A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth."""  *In re Cedillo*, 573 B.R. at 446 (quoting *In re Manno-DeGraw*, 2016 WL 3708062, at *2 (quoting *In re Maletta*, 159 B.R. at 112)).

As described above, Ms. Kaschner has identified several statements made by Mr. Venticinque under oath at his Section 341 Meeting that were, she claims, false.  And in each circumstance, she has alleged reasons why the statement is false.  These reasons identified by Ms. Kaschner are grounded in Mr. Venticinque's personal knowledge and experience.  For example, she asserts that Mr. Venticinque and Mr. Chouraqui were business partners in the Union City Condominium Project; that he did business in connection with that project in Union City; that he knew of the Judgment before 2016 or 2017 because he was notified of this action by a summons and complaint; that he served a far briefer time in prison than the five years that he claimed; that his LinkedIn account describes him as a project manager at Tona Construction; and that he had accounts at Ameriprise Financial and E-Trade.

That is, for substantially the same reasons that Ms. Kaschner has adequately alleged that Mr. Venticinque made a false statement under oath at his Section 341 Meeting in connection with his bankruptcy case, she has also adequately alleged that Mr. Venticinque knew that these statements were false at the time they were made.

As also described above, Ms. Kaschner has identified an additional statement allegedly made by Mr. Venticinque in connection with his bankruptcy case, at the January 14 Pre-Trial Conference.  She alleges that he knowingly made a false statement when he said "[t]here are no checks" at the January 14 Pre-Trial Conference.  Am. Compl. ¶ 43.  But this statement was not made under oath.  And as a result, it does not come within the scope of Section 727(a)(4)(A).

Here again, at the pleadings stage, on this Motion to Dismiss, Ms. Kaschner is not required to *prove* that Mr. Venticinque knowingly made a false statement under oath in connection with his bankruptcy case in order to state this element of her claim.  Rather, she is required only to *allege* facts sufficient to show that, if they are proved, he did so.

For these reasons, the Court concludes that Ms. Kaschner has adequately alleged the third element of her Section 727(a)(4)(A) denial of discharge claim, that Mr. Venticinque knowingly made a false statement under oath in connection with his bankruptcy case. But she has done so only with respect to Mr. Venticinque's statements at his Section 341 Meeting, and not with respect to his statement at the January 14 Pre-Trial Conference.

Whether Ms. Kaschner adequately alleges that Mr. Venticinque made the false statements with fraudulent intent. The fourth element that Ms. Kaschner must allege to state a plausible Section 727(a)(4)(A) claim is that Mr. Venticinque made the false statements with fraudulent intent. "'Fraudulent intent must be shown by actual, not constructive fraud.'" *In re Cedillo*, 573 B.R. at 466 (citing *In re Dubrowsky*, 244 B.R. at 571). Allegations showing a reckless indifference to the truth may also be sufficient to sustain an action for fraud. *In re Dubrowsky*, 244 B.R. at 572 (citing *Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1583 (2d Cir. 1983)).

In the Amended Complaint, Ms. Kaschner alleges that Mr. Venticinque made each of the allegedly false statements with the intent to defraud, both at the Section 341 Meeting and at the January 14 Pre-Trial Conference. In this Motion to Dismiss, Mr. Venticinque argues that even if the statements he made at the Section 341 Meeting and the January 14 Pre-Trial Conference are found to be false, he did not make them with any intent to deceive or fraudulent intent. Mot. at 6-7.

As described above, Ms. Kaschner has identified several statements made by Mr. Venticinque under oath at his Section 341 Meeting that were, she claims, false, and has identified reasons why the statement is false. But a false statement, even a knowingly false statement, may not rise to the level of a statement made with fraudulent intent. Courts agree that fraudulent intent requires more than falsity, even knowing falsity. And allegations that satisfy the element

of a false statement made with knowledge that it is false may not, without more, meet the additional requirement of a false statement that is made with fraudulent intent.

And here, a review of the Amended Complaint shows that Ms. Kaschner has not alleged facts that, if proved, would show that Mr. Venticinque made the assertedly false statements at his Section 341 Meeting with fraudulent intent.  Instead, she has advanced conclusory assertions that Mr. Venticinque made these statements with the intent to defraud.  And that is not sufficient to allege a plausible Section 727(a)(4)(A) claim.

As noted above, Ms. Kaschner has also identified an additional false statement allegedly made by Mr. Venticinque in connection with his bankruptcy case, at the January 14 Pre-Trial Conference, that "[t]here are no checks."  Am. Compl. ¶ 43.  But again, this statement was not made under oath.  And as a result, it does not come within the scope of Section 727(a)(4)(A).

For these reasons, the Court concludes that Ms. Kaschner has not adequately alleged the fourth element of her Section 727(a)(4)(A) denial of discharge claim, that Mr. Venticinque knowingly made a false statement under oath with the intent to defraud in connection with his bankruptcy case.

<u>Whether Ms. Kaschner adequately alleges that Mr. Venticinque's false statements materially relate to his bankruptcy case.</u>  The fifth element that Ms. Kaschner must allege to state a plausible Section 727(a)(4)(A) claim is that Mr. Venticinque's allegedly false statements materially relate to his bankruptcy case. This requirement reflects the fact that the denial of a debtor's discharge is a significant sanction, and only a false statement that has a material relationship to the debtor's bankruptcy case will trigger this consequence.  Courts look to "whether the false statement relates to the debtor's business transactions or estate or whether it is

49

pertinent to the discovery of assets or the existence or disposition of property." *In re Henderson*, 423 B.R. at 618 (citing *In re Wisell*, 2007 WL 2463268, at *9).

In the Amended Complaint, Ms. Kaschner alleges, in substance, that each of Mr. Venticinque's allegedly false statements at the Section 341 Meeting of Creditors and the January 14 Pre-Trial Conference has a material relationship to his bankruptcy case.  For each allegedly false statement, she recites a conclusory statement that the statement was made "in or in connection with the case," without alleging any facts to show the nature or materiality of the "connection" between the statement and the Debtor's bankruptcy case.  Am. Compl. ¶¶ 44-49.

In this Motion to Dismiss, Mr. Venticinque argues, in substance, that even if the statements he made at the Section 341 Meeting and the January 14 Pre-Trial Conference are found to be false, they do not materially relate to his bankruptcy case.  He argues that the lawsuits with Mr. Chouraqui referenced in his divorce papers date back to 2009, and have no bearing on his bankruptcy case.  Mot. at 7.  And he states that has not worked for Tona Construction since 2019, so that any statement with respect to that firm would, again, not have a material relationship to his bankruptcy case.  Mot. at 8.  To the same effect, he argues that any statements concerning when he became aware of the Judgment is simply not material to this bankruptcy case.  Mot. at 8-9.  And as to his statements at the Section 341 Meeting concerning whether he has had accounts at Ameriprise Financial or E-Trade, here too, he argues both that his statements were not false, and that they are not material to his bankruptcy case.

Here, a review of the Amended Complaint shows that Ms. Kaschner has not alleged facts that, if proved, would show that the assertedly false statements made by Mr. Venticinque at his Section 341 Meeting are material to his bankruptcy case.  Certain of these statements concern Mr. Venticinque's knowledge of and business relationship with Mr. Chouraqui, his knowledge of

Tona Construction, and his work in Union City, including the Union City Condominium Project, but Ms. Kaschner has not alleged facts sufficient to show that these assertedly false statements affect the administration of Mr. Venticinque's bankruptcy case.  Am. Compl. ¶¶ 44-46.

Other statements concern when Mr. Venticinque first learned of the Judgment, and the amount of time he spent in jail  – but here again, it is not clear from the allegations of the Amended Complaint how this would affect Mr. Venticinque's bankruptcy case.  Am. Compl. ¶¶ 47-48.

And finally, certain statements concern whether Mr. Venticinque had accounts at two firms, Ameriprise Financial and E-Trade.  To be sure, concealing an asset would be a serious problem, and false statements made with the objective of hiding an asset from the bankruptcy process could have serious consequences indeed.  But here, Ms. Kaschner has not alleged facts to show that Mr. Venticinque's asserted statements with respect to accounts at these firms were somehow part of an effort to conceal assets, or otherwise to interfere materially with the administration of bankruptcy case.  Instead, Ms. Kaschner has advanced conclusory assertions that these alleged false statements are material.  And that is not sufficient to allege a plausible Section 727(a)(4)(A) claim.

As noted above, Ms. Kaschner has also identified an additional false statement allegedly made by Mr. Venticinque in connection with his bankruptcy case, at the January 14 Pre-Trial Conference, that "[t]here are no checks."  Am. Compl. ¶ 43.  But again, this statement was not made under oath.  And as a result, it does not come within the scope of Section 727(a)(4)(A).

*            *            *

For these reasons, and based on the entire record, the Court finds that Ms. Kaschner has not adequately alleged a Section 727(a)(4)(A) Claim.  Accordingly, the Motion to Dismiss this claim is granted.

## <u>Conclusion</u>

For the reasons stated herein, and based on the entire record, Mr. Venticinque's Motion to Dismiss Ms. Kaschner's Bankruptcy Code Section 523(a)(2)(A) claim that the judgment entered in the New Jersey State Court Action is nondischargeable is denied, and that claim will not be dismissed.

And for the reasons stated herein, and based on the entire record, Mr. Venticinque's Motion to Dismiss Ms. Kaschner's Bankruptcy Code Section 727(a)(4)(A) claim that Mr. Venticinque's bankruptcy discharge should be denied is granted, and that claim will be dismissed.

An order in accordance with this Memorandum Decision shall be entered simultaneously herewith.

Dated: Brooklyn, New York
October 12, 2022

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**